IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MIDLAND PIZZA, LLC, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | No. 10-2219-CM-GLR |
| **SOUTHWESTERN BELL TELEPHONE** ) | |
| **COMPANY, d/b/a AT&T KANSAS,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

In this putative class action, plaintiffs allege that because of defendant's failure to police third-party billers, defendant unlawfully "crammed" their phone bills, that is, billed and collected payment for purported services that plaintiffs did not order or authorize. Plaintiffs move to certify two classes: one class—seeking injunctive relief—of defendant's customers whose bills contained third-party charges; and one class—seeking damages—of defendant's customers whose bills contained third-party charges for which there was no valid authorization. Before the court is Plaintiffs' Motion for Class Certification (Doc. 65). The court must determine whether class-wide injunctive relief is appropriate, and whether common questions of fact and law predominate as required for certification of a damages class. Because the injunctive relief requested is vague and only incidental to the monetary damages sought, the court declines to certify a class for injunctive relief. And because the true injury in this case is not defendant's policies but the validity of the charges on each individual plaintiff's phone bill, the court declines to certify the damages class. The motion is denied.

**I.      The Complaint's Allegations of Cramming**

Briefly, and according to the amended complaint, plaintiff Midland Pizza, LLC received eight monthly bills from defendant Southwestern Bell Telephone, d/b/a AT&T Kansas ("Southwestern Bell" or "defendant") containing charges attributed to billing service "ILD Teleservices, Inc." in the amount of $49.95.  Midland maintains it did not order services or authorize any third party, including "ILD Teleservices, Inc.," to bill it for services through its telephone bill.

Plaintiff Pflumm & College Pizza, L.L.C. received fifteen bills from defendant containing charges attributed to various billing services.  These charges ranged from $12.95 to $49.95.  Pflumm & College maintains it did not order services or authorize any third party to bill it for services through its telephone bill.

Plaintiff Prairie Village Pizza, LLC, received fourteen monthly bills from defendant containing charges of $49.95 attributed to "ILD Teleservices Inc."  Prairie Village maintains it did not order services or authorize any third party to bill it for services through its telephone bill or otherwise.

Plaintiff Mark Watkins received at least two bills from defendant containing charges attributed to "TRSCN CLRNG," and including a charge of $9.95 for "TEXTSAVINGS, LLC-INET DIR LSTNG W/TEXT."  Mark Watkins maintains he did not order services or authorize any third party to bill him for services through his telephone bill.

Based on these facts, plaintiffs claim: (1) unlawful addition of services (cramming) in violation of Kan. Stat. Ann. § 50-6,103, of the Kansas Consumer Protection Act (KCPA); (2) deceptive trade practices in violation of the KCPA; (3) unconscionable practices in violation of the KCPA; (4) unjust enrichment; and (5) negligence.  Only plaintiff Watkins may pursue counts (1)

through (3), the KCPA claims. (Doc. 53 at 8.) In addition to injunctive relief requested in the introductory paragraphs of the complaint, plaintiffs seek restitution and disgorgement, actual damages, civil penalties, punitive damages, attorney's fees, and prejudgment interest.

## II.     Legal Standards for Certification of a Class

Plaintiffs ask the court to certify two classes, one for injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2) and one for damages pursuant to Fed. R. Civ. P. 23(b)(3). Before certifying a class, the court must be satisfied that the party seeking class certification has met the requirements of Rule 23. In deciding whether the proposed class meets the Rule's requirements, the district court "must accept the substantive allegations of the complaint as true," though it "'need not blindly rely on conclusory allegations of the complaint which parrot Rule 23' and 'may consider the legal and factual issues presented by plaintiff's complaints.'" *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (quotations omitted). Although the court does not pass judgment on the merits of the case at the class certification stage, it must conduct a "rigorous analysis," to ensure Rule 23's requirements are met. *Id*. (quotations omitted). The party seeking class certification bears the burden of proving that the Rule is satisfied. *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004) ("*Shook I*"). The focus of the briefing in this case is on whether the requirements of Rule 23(b) are met. The court therefore addresses this question first.

### A.     Rule 23(b)(2) Class for Injunctive Relief

Rule 23(b)(2) requires a plaintiff to show that defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The putative (b)(2) class includes:

> [A]ll persons in the state of Kansas who have received local exchange carrier

> telephone services through [defendant], have been billed for such services, and have received a charge on a bill for purported non-AT&T services or products. Excluded from the class are Defendants; officers, directors, and employees of Defendants; any entity in which any Defendant has a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of Defendants; any federal, state, or local government entity; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

(Doc. 65 at 2.)

Plaintiff Watkins argues that defendant's uniform policies result in cramming, and that its lack of safeguards to prevent such cramming applies to all putative class members. The relief requested, therefore, is that defendant be ordered to "put safeguards in place that *prevent all cramming*." (Doc. 89 at 7 (emphasis in original).) Defendant argues, and the court agrees, that certification under Rule 23(b)(2) would be inappropriate because plaintiffs' monetary claims predominate, and because the relief requested is too vague.

Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive. *Fincher v. Prud. Prop. & Cas. Ins. Co.*, 374 Fed. App'x 833, 847–48 (10th Cir. 2010); *Barela v. United Nuclear Corp.*, 462 F.2d 149, 154 (10th Cir. 1972). A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where the monetary relief is merely incidental to the primary claim for injunctive relief. *Id*. In this case, the primary relief sought is not declaratory or injunctive. Although plaintiffs request the court issue "an injunction preventing [defendant] from engaging in further cramming practices," (Doc. 34 at 4), a close examination of the facts and circumstances alleged here—and the causes of action asserted—make it clear that the primary intent of the litigation is to reclaim money damages. The injunctive relief requested is to prevent unlawful action by the defendant that would create further similar monetary damages. Because the court believes the declaratory and injunctive relief requested is secondary to the damages requested, class certification under Rule 23(b)(2) is inappropriate. *See Utility Consumers'*

-4-

*Action Network v. Sprint Solutions, Inc.,* 259 F.R.D. 484, 488 (S.D. Cal. 2009) (denying class certification to plaintiff consumers who alleged violations of state and federal consumer protection law against telecommunications company; holding plaintiffs failed to establish that company acted in way that was generally applicable to putative class, as required to certify class under Rule 23(b)(2); primary relief sought was damages-based rather than declaratory or injunctive).

And even if injunctive relief was the predominate relief sought, the court concludes that plaintiff Watkins' request is too vague. Any class-wide injunctive relief must satisfy the requirement of Rule 65(d) that every injunction "state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1); *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso* ("*Shook II* "), 543 F.3d 597, 604 (10th Cir. 2008). Thus, to satisfy Rule 23(b)(2) at the class certification stage, "plaintiffs must describe in reasonably particular detail the injunctive relief which they seek so that the [c]ourt can at least conceive of an injunction which would satisfy the requirements of Rule 65(d) and Rule 23(b)(2)." *In re Motor Fuel Temp. Sales Practices Litig.*, 271 F.R.D. 221, 225 (D. Kan. 2010) (citing *Shook II*, 543 F.3d at 605).

In this case, plaintiff Watkins' requested relief is "an injunction preventing [defendant] from engaging in further cramming practices." (Doc. 34 at 4.) Plaintiff suggests the court might do so by "requiring [defendant] to take measures preventing cramming of its customers." (Doc. 66 at 25.) Plaintiff Watkins does not suggest what these measures might be, or how the court could craft any such injunction or enforce any such injunction. An injunction simply requiring defendant to obey the law, which is essentially what plaintiff requests here, is too vague to satisfy Rule 65. *Shook II*, 543 F.3d at 604; *see also Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004).

**B.     Rule 23(b)(3) Class for Damages**

Rule 23(b)(3) requires a plaintiff to show that "the questions of law or fact common to class

-5-

members predominate over any questions affecting only individual members" and that a class action is the superior method for fairly and efficiently adjudicating the matter. The putative class includes:

> All persons and entities in the state of Kansas who (1) were customers of and received local exchange carrier telephone services through [Southwestern Bell]; (2) have been billed for such services; (3) have received a charge on a bill for purported non-AT&T services or products; and (4) paid the charge for third party services or products. Excluded from the Class are those customers for whom Defendants possess a valid authorization from the customer for the non AT&T charges; Defendants officers, directors, and employees; any entity in which any Defendant has a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of Defendants; any federal, state, or local government entity; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

(Doc. 65 at 3.)

Plaintiffs argue that the predominance requirement is met because the focus of the lawsuit is on defendant's failure to safeguard its customers against cramming. Plaintiffs assert "there are no individualized issues here because all Class Members are treated exactly the same and subject to the very same *lack* of safeguards." (Doc. 66 at 26 (emphasis in original).) Further, plaintiffs assert that class members will not have to establish whether they authorized charges: defendant's records will reveal whether the necessary authorization exists.

Defendant, on the other hand, argues (1) there are no common questions: whether charges were validly authorized requires an individual inquiry; (2) a class is not superior or manageable; (3) the proposed class is impermissible because it requires a legal determination that charges were not validly authorized; (4) defendant's voluntary payment defense requires individual inquiry; (5) the unjust enrichment claim requires individual inquiry; and (5) the punitive damages claim requires individual inquiry.

Plaintiffs rely heavily on the Tenth Circuit's opinion in *DG v. Devaughn*, 594 F.3d 1188 (10th Cir. 2010). In that case, foster children plaintiffs , through their next friends, brought a class

action under 42 U.S.C. § 1983 against the Oklahoma Department of Human Services ("OKDHS") claiming that OKDHS's policies and practices exposed them to an impermissible risk of harm in violation of their constitutional rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. The district court certified the class and, on interlocutory review, the Tenth Circuit affirmed.

Plaintiffs rely on the *DG* opinion to argue that defendant's policies are the focus of the action, and that no individualized inquiries will need to be made. Plaintiffs' argument misses the mark, and misapplies the court's holding in *DG*.

In *DG*, the injury at issue was not actual abuse or neglect, it was the unconstitutional threat of harm. There existed common questions of fact and law in *DG* because the inquiry was focused on OKDHS's policies, not individual harms. If these policies violated the constitutional rights asserted, then *that* was the harm, regardless of whether there was actual harm to any class member. There is no legally cognizable right to be free from negligence or KCPA violations. The distinction may be intellectual, but it is significant.

In this case, the injury is not the fact that plaintiffs are subject to defendant's policies regarding cramming. Despite plaintiffs' attempt to characterize it otherwise, the injury at issue here is individualized: whether each class member was billed for, and paid for, unauthorized charges on his or her telephone bill. And if the charges were authorized, individual questions of fact exist as to whether that authorization was valid. Common questions of law or fact do not predominate over questions affecting only individual members. Defendant is correct that no common proof is possible to demonstrate injury for all class members, because to determine whether or not a charge was authorized will require individualized proof. Other courts have come to the same conclusion in similar cases. *See Lady Di's, Inc., v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728, 738 (7th Cir.

2011) (upholding denial of class certification on basis that common issues did not predominate as required for certification of class of customers allegedly harmed by unauthorized charges on bills in violation of Indiana anti-cramming regulation); *Stern v. Cingular Wireless Corp.*, No. CV 05-8842 CAS, 2009 WL 481657, at *6–8 (C.D. Cal. Feb. 23, 2009) (denying motion for class certification in anti-cramming suit where plaintiff offered no plausible class-wide method to prove cramming, holding that "[t]he simple fact is that one cannot determine what services were crammed without taking the deposition of each class member to determine what services he or she authorized"); *Brown v. SBC Comm'ns, Inc.*, No. 05-cv-777-JPG, 2009 WL 260770, at *3 (S.D. Ill. Feb. 4, 2009) (denying certification of a class alleging that a telecommunications company placed unauthorized charges on local telephone bills, holding questions of fact common to class members did not predominate over questions affecting only individual members: question of whether each potential class member authorized the services for which he or she was billed required individualized inquiries that rendered the class inappropriate for certification).  Defendant's voluntary payment defense, assuming without deciding that it is properly raised here, and the unjust enrichment and punitive damages claims, would also require analysis of facts unique to each class member.

Because the court determines that plaintiffs failed to meet the requirements of Rule 23(b), the court declines to address the requirements of Rule 23(a).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Class Certification (Doc. 65) is denied.

Dated this 18th day of November 2011, at Kansas City, Kansas.

                                                               s/ Carlos Murguia
                                                               **CARLOS MURGUIA**
                                                               **United States District Judge**